RYAN G. WELDON
TIMOTHY A. TATARKA
Assistant U.S. Attorneys
U.S. Attorney's Office
P.O. Box 8329
101 E. Front St., Suite 401
Missoula, MT 59802
Phone:  (406) 542-8851
FAX:   (406) 542-1476
Email:     Ryan.Weldon@usdoj.gov
           Tim.Tatarka@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| **CHRISTOPHER MARTINEZ MARVAN,**<br><br>Petitioner,<br><br>vs.<br><br>**ANDREW SCHARNWEBER**, Chief Patrol Agent, Havre Sector, U.S. Border Patrol; **BRUCE SCOTT**, Warden, Northwest Immigration and Customs Enforcement Processing Center; **DREW BOSTOCK**, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement; **TODD M. LYONS**, Acting Director, United States Immigration and Customs | **CV 25-49-H-DLC**<br><br><br>**RESPONSE TO SHOW CAUSE ORDER AND PETITION FOR WRIT OF HABEAS CORPUS** |

1

| | |
|---|---|
| Enforcement; **KRISTI NOEM**, Secretary, United States Department of Homeland Security; **PAMELA BONDI**, Attorney General of the United States, in their official capacities,<br><br>            Respondents. | |

# INTRODUCTION

Christopher Martinez Marvan filed an Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, arguing he was illegally seized, and he should be immediately released from his federal custody pursuant to immigration proceedings. In doing so, Marvan seeks to bypass the very process Congress established to address the volume and complexity of administrative immigration cases.

Marvan was stopped subject to valid traffic violations, during the stop authorities obtained probable cause that Marvan—who had previously been arrested after illegally entering the United States—was not in the country legally. He was subsequently arrested for purposes of civil immigration proceedings.

Marvan's rights were not violated, but any constitutional challenges he may have are appropriately raised before an immigration judge in his immigration proceeding and subject to review by the Ninth Circuit. Marvan's use of habeas

2

relief before this Court, however, was specifically prohibited by Congress. 8 U.S.C. § 1252(a)(9). Moreover, it is undisputed that Marvan is an alien, and his detention subject to immigration proceedings is supported by ample evidence independent of the stop, barring release under habeas. Finally, even if this Court were the proper forum and habeas were the proper vehicle, law enforcement lawfully stopped, detained, and arrested Marvan.

The petition should be denied, and Marvan's case should proceed through administrative immigration proceedings—just like the mine run of other immigration cases.

## FACTUAL BACKROUND

### A. Law enforcement was attempting to arrest illegal aliens with outstanding warrants.

On July 1, 2025, the Border Patrol and Homeland Security Investigations, along with other law enforcement agencies, were searching for two Venezuelan nationals known to live in Helena, Montana. The two men were in the country illegally and both had outstanding warrants for violent crimes they committed in Helena, Montana.

Brayan Garcia-Garcia, the first individual law enforcement was seeking to arrest, had an active arrest warrant from Lewis and Clark County for Partner or Family Member Assault. The second individual, Anderson Bastidas-Linares, also

had an active arrest warrant from Lewis and Clark County for Felony Assault with a Weapon and a Partner or Family Member Assault (second offense).[1]

### B. During surveillance, law enforcement saw Christopher Martinez Marvan engage in suspicious behavior while driving.

In the morning of July 1, 2025, federal and state law enforcement agencies were working jointly to conduct surveillance on an area where Garcia-Garcia and Bastidas-Linares were likely to be found. During the surveillance operation, law enforcement observed a Dodge pickup truck enter a nearby parking lot. The driver of the vehicle exited the truck, walked out of the parking lot, looked at one of the surveillance officers, and quickly returned to the truck.

Law enforcement found the behavior suspicious, especially because Garcia-Garcia and Bastidas-Linares were known to use vehicles registered to other individuals. Garcia-Garcia and Bastidas-Linares were also known to have other individuals drive them, presumably to further evade law enforcement.

### C. Law enforcement stops Christopher Martinez Marvan for a traffic violation, and he admits to his status as an illegal alien from Mexico.

Given the suspicious behavior, which took place in the exact location where Garcia-Garcia and Bastidas-Linares were known to associate, law enforcement

---

[1] Law enforcement tried to arrest Bastidas-Linares two weeks prior, but Bastidas-Linares fled.

4

followed the Dodge truck.  While doing so, law enforcement wanted to identify if the driver was Bastidas-Linares, or if there was any association with Garcia-Garcia or Bastidas-Linares.  During radio traffic, law enforcement stated the Dodge truck "possibly has a wanted individual in it."

While following the vehicle, the Helena Police Department determined the vehicle had an expired registration, which is a violation of Montana state law.  *See, e.g.,* Mont. Code Ann. §§ 61-3-301(1)(a), 61-3-601 (defining crime as a misdemeanor and punishable by $500).   The Helena Police Department stopped the Dodge pickup for the traffic violation.

The officer approached the vehicle and explained the purpose of the stop, which was the expired license plates.  The officer then requested identification from the driver.  The driver identified himself as "Christopher Martinez" but said he did not have identification with him.  When pressed, Marvan admitted he did not have a Montana driver's license and no other identification.

Driving without a valid Montana driver's license is another state law violation.  *See, e.g.,* Mont. Code Ann. § 61-5-102(1)(a) (identifying a $500 fine).  Marvan was asked to exit the vehicle given that he was unidentified, did not have a valid driver's license, and was unable to legally continue to drive the vehicle.  Officers explained Marvan was only detained so they could "figure things out."

5

During the detention, law enforcement inquired if Marvan knew anyone named "Anderson," one of the individuals for whom law enforcement was searching. Marvan denied knowing Anderson.

Law enforcement escorted Marvan to the front of the patrol vehicle and explained they needed to identify him given that he was driving without identification. While attempting to identify Marvan through dispatch, law enforcement did not have a state of residency or nationality—only the name "Christopher Martinez," his gender, and his date of birth. Dispatch ultimately was able to confirm that Marvan did not have a valid Montana driver's license.[2] The Helena Police Department officer began to write a citation.

While the officer was checking on identification and filling out the citation, federal authorities arrived on scene. Federal authorities continued to question Marvan, who admitted that he was a Mexican national. Federal authorities then searched Marvan's name and date of birth, but they found zero returns showing he was lawfully admitted to the United States.

---

[2] At the scene, law enforcement identified Marvan through a booking photo for a Partner or Family Member Assault arrest on January 6, 2023. It showed that Marvan had the "same tattoos." During the booking process in 2023, Marvan identified his birthplace was Mexico and his citizenship was also Mexico. Authorities subsequently recovered a copy of Marvan's birth certificate from Mexico due to the name and date of birth he provided to law enforcement at the beginning of the traffic stop.

6

Armed with the above knowledge, and while the Helena Police Department was writing the traffic citation, the Border Patrol Agent asked Marvan if he was illegally present in the United States. Marvan admitted he was illegally present in the United States.

The Helena Police Department officer explained in his report what occurred:

> With [Marvan] positively identified and there being no active warrants for his arrest, I gathered the rest of his information and began a citation for Drivers to be Licensed, 61-5-102 MCA. While filling out the citation, I was advised that the federal authorities on scene were taking custody of [Marvan] and a federal law enforcement officer beg[a]n switching my handcuffs on [Marvan's] wrists for his. With [Marvan] in federal custody, the decision was made to void the local citation.

**D. Border Patrol arrested Marvan as an illegal alien, and he was transported for administrative immigration proceedings.**

Border Patrol arrested Marvan and transported him to the Lewis and Clark County Jail given his illegal status. Border Patrol then transported Marvan to Sunburst, Montana, where he would have been subjected to administrative deportation proceedings.

As the investigation continued, law enforcement learned that Marvan has significant immigration contacts over the years. For example, in 2007, the United States voluntarily returned Marvan on two occasions after he illegally entered the United States. In 2021, law enforcement arrested Marvan four times after he

7

illegally entered the United States. As a result, he was expelled from the United States on May 5, 2021, May 15, 2021, May 26, 2021, and June 2, 2021. Marvan also applied to enter the United States on two occasions, but both applications were denied in 2014 and 2018. Marvan is currently under a 10-year ban due to his prior unlawful presence in the United States.

During administrative deportation proceedings, Marvan would, among other rights, have the opportunity to obtain counsel, examine the evidence, present evidence on his own behalf, and cross examine government witnesses. *See, e.g.,* 8 U.S.C. § 1229a(b)(4). The immigration judge would then make the determination deciding the "inadmissibility or deportability" of an alien. 8 U.S.C. § 1229a(a), (c). An alien may raise, of course, exceptional circumstances or asylum. 8 U.S.C. § 1229a.

Marvan has instead filed a petition in federal district court.

## ARGUMENT

Marvan is not entitled to the relief he seeks under 28 U.S.C. § 2241. While Marvan can raise any constitutional challenges he has through the course of immigration proceedings and receive judicial review of any order of removal, Congress has expressly precluded review under 28 U.S.C. § 2241 as a means of circumventing that process. *See* 8 U.S.C. § 1252(a)(9). Moreover, Marvan's

identity is not subject to suppression, and the government has ample evidence unrelated to Marvan's arrest to support his removability. Finally, even assuming the Court had jurisdiction to consider the merits, no constitutional violation existed warranting relief here.

> **A.    Marvan's claims "aris[e] from any action taken or proceeding brought to remove an alien" and thus fall within the sole jurisdiction of the court of appeals on a petition for review.**

Through the Immigration and Nationality Act, as amended by the REAL ID Act of 2005, Congress "consolidated judicial review of immigration proceedings into one action in the court of appeals." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233 (2020) (quotation marks and citation omitted). This provision, 8 U.S.C. § 1252(b)(9), became to be known as the "zipper clause" because it "consolidates or 'zips' 'judicial review' of immigration proceedings into one action in the court of appeals." *Singh v. Gonzales*, 499 F.3d 969, 976 (9th Cir. 2007) (quoting *Mahadeo v. Reno,* 226 F.3d 3, 12 (1st Cir. 2000)).

As the Ninth Circuit has explained, the Supreme Court concluded that the provision, as originally enacted, did not expressly preclude habeas review, meaning habeas relief remained available. *Id.* at 976-977 (citing *INS v. St. Cyr*, 433 U.S. 289, 314 (2001)). Congress went back to work and amended the

9

provision to include the express exclusion of relief under 28 U.S.C. § 2241, as highlighted below:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. *Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.*

8 U.S.C. § 1252(b)(9) (Pub. L. 109-13, Div. B, Title I, §§ 101(e), (f), 106(a), May 11, 2005, 119 Stat. 305, 310) (emphasis added); *see also* 8 U.S.C. § 1252(a)(5) ("[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [Petition for Review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016).

While claims "collateral to, or independent of" the removal process are still subject to habeas review, "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section

1252(a)(5)."[3] *Id.* at 1032-1033 (*quoting Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012)).

Marvan's claims are inextricably linked to "questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . ." 8 U.S.C. § 1252(b)(9). For example, Marvan seeks release because his "detention violates his Fourth Amendment right to be free from unreasonable seizures." Amended Petition at 11. Specifically, he alleges that his initial seizure lacked reasonable suspicion, and his subsequent arrest lacked probable cause.[4] Amended

---

[3] Marvan cites to *Flores-Torres v. Mulkasey*, 548 F.3d 708 (2008), for the proposition that habeas relief is available in the absence of a final removal order. Amended Petition at 2. The Ninth Circuit has made clear that it does not matter when a final order of removal is issued. *J.E.F.M.*, 837 F.3d at 1029. Section 1252(b)(9) provides that aliens cannot "bypass the immigration courts and directly proceed to district court," but rather "must exhaust the administrative process before they can access the federal courts" when their claims arise from removal proceedings. *Id.* (requiring exhaustion for a class of immigrants "at various stages of the removal process" preceding the issuance of a final removal order, including aliens "waiting to have their first removal hearing"). What distinguished *Flores-Torres* was not the absence of a removal order, but the fact that his citizenship claims went to the authority of immigration officials to detain him "because he is not an 'alien,' but a United States citizen," and thus the *detention* was "unlawful under the Constitution and the Non-Detention Act, 18 U.S.C. § 4001." *Flores-Torres*, 548 F.3d at 710. Here, Marvan does not dispute that he is a Mexican national. *See* Amended Petition at 2-3.

[4] Marvan also alleges a violation of 8 C.F.R. § 287.8(c)(2). Amended Petition at 8. He does not explain how such a violation would constitute a Fourth Amendment

11

Petition at 9-10. While Marvan does not explain in his petition why he would be entitled to release if his Fourth Amendment rights were violated, the argument appears to be, in analogy to a criminal prosecution, that because his rights were violated, the evidence obtained as a result should be suppressed under the exclusionary rule. Then, presumably, the argument continues that in the absence of such evidence the immigration proceeding should not go forward and, thus, that he should be released.

While the problems with this reasoning are addressed below, at present it is sufficient that the argument itself would require the Court to opine on the merits of the immigration proceeding. This demonstrates that the claims are inextricably intertwined with "the proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), and judicial review must be channeled to the court of appeals. This conclusion is reinforced by the fact that claims relating to an immigrant's detention and arrest are routinely raised in petitions for review to the court of appeals. *See e.g.*, *Gamez-Reyes v. Bondi*, No. 22-2681, 2025 WL 501400, at *1 (9th Cir. 2025); *Ramierz Santiago v. Garland*, No. 22-619, 2023 WL 6875282, at *1 (9th Cir. 2023); *B.R. v. Garland*, 26 F.4th 827, 840 (9th Cir. 2022).

---

violation or provide grounds for his release.

Marvan also contends that there was interference with his access to counsel. Amended Petition at 10. The Ninth Circuit has expressly held that access to counsel claims must be raised by the petition for review process because they "arise from" removal proceedings. *J.E.F.M.*, 837 F.3d at 1033; *see id.* ("Right-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals."). That claim cannot be raised in a habeas proceeding.

### B.   Marvan's identity is not subject to suppression, and ICE has sufficient independent evidence that he is subject to removal.

"A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158, (1923). In this case the law is clear that there are sufficient grounds for Marvan's detention.

As the Supreme Court has made clear, "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); *see also id.* ("[R]egardless of how the arrest is effected, deportation

13

will still be possible when evidence not derived directly from the arrest is sufficient to support deportation."). Accordingly, "[a]lienage evidence obtained using only an alien's identity is severed from any violation that may otherwise justify exclusion." *B.R. v. Garland*, 26 F.4th 827, 842 (9th Cir. 2022).

In this case, it is abundantly clear that there is sufficient evidence of his alienage. Indeed, as noted, Marvan has acknowledged that he is a Mexican national. *See* Amended Petition at 2. Marvan's records confirm that ICE had sufficient evidence independent of any alleged constitutional violation to stop him. For example, immediately upon law enforcement stopping Marvan for a traffic violation, he had no identification, but he identified his name. This name alone demonstrated Marvan was a Mexican national, and he was never legally admitted into the United States. Nothing more was required.[5]

///

///

---

[5] Moreover, even with respect to information beyond identity, "statements and other evidence obtained as a result of an unlawful, warrantless arrest" are admissible in removal proceedings. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040, 1050–1051 (1984). While there is an exception for an "egregious violation" or violation or a regulation promulgated for the benefit of petitioner and that violation "is prejudicial," *Velazco Castellano v. Garland*, 856 Fed. Appx. 112, 115 (9th Cir. 2021) (unpublished), the very fact that the standard requires a determination of prejudice requires that the immigration proceeding must be allowed to play out.

## C. Marvan's Fourth Amendment rights were not violated.

Even if the Court were to reach the issue, there was no violation of Marvan's Fourth Amendment rights—much less an egregious violation.

The initial stop of Marvan was based on reasonable suspicion of a traffic violation. *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–1105 (9th Cir.2000) ("[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops."). The underlying motivations of the officers are irrelevant. *United States v. Taylor*, 60 F.4th 1233, 1240 (9th Cir. 2023) ("The officers' subjective motivations, whatever they may have been, could not change the objective reasonableness of their actions."); *see also United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) ("The standard for determining whether probable cause or reasonable suspicion exists is an objective one; it does not turn either on the subjective thought processes of the officer or on whether the officer is truthful about the reason for the stop.").

Nor was the stop improperly extended prior to law enforcement learning Marvan was a Mexican national. The police may ask people who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County,* 542 U.S. 177, 185 (2004) ("In the ordinary course a police

15

officer is free to ask a person for identification without implicating the Fourth Amendment."); *INS v. Delgado,* 466 U.S. 210, 216 (1984) ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."). Indeed, determining whether Marvan was legally driving the vehicle is part of the mission of the stop. *See United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015) (listing "checking the driver's license" as one of the ordinary inquiries included in the mission of the stop); *see also* Mont. Code Ann. § 61-5-102(1)(a).

The Helena Police Department officer diligently proceeded to pursue the mission of the stop by gathering the information needed to issue a citation. No independent reasonable suspicion was required to question Marvan about his immigration status. *Muehler v. Mena*, 544 U.S. 93, 101 (2005) ("[O]fficers did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status."); *Florida v. Bostick,* 501 U.S. 429, 434 (1991) (The Supreme Court has "held repeatedly that mere police questioning does not constitute a seizure.").

Once Marvan admitted his alienage, it was appropriate for ICE to check on his status while the Helena Police Department officer continued with the traffic stop. *See Rodriquez v. United States*, 575 U.S. 348, 354 (2015) ("[T]he Fourth

16

Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention."). Finally, once ICE had probable cause, including Marvan's admission, he was appropriately subject to arrest.

## CONCLUSION

Marvan's petition for writ of habeas corpus is not authorized. The petition should be dismissed.

DATED this 7th day of July, 2025.

        KURT G. ALME
        United States Attorney

        */s/ Timothy A. Tatarka*
        TIMOTHY A. TATARKA
        Assistant U. S. Attorney

        */s/ Ryan G. Weldon*
        RYAN G. WELDON
        Assistant U. S. Attorney

## **CERTIFICATE OF COMPLIANCE**

The attached Response is proportionately spaced, has a typeface of 14 points or more, and the body contains 3,656 words.

KURT G. ALME
United States Attorney


*/s/ Timothy A. Tatarka*
TIMOTHY A. TATARKA
Assistant U. S. Attorney

*/s/ Ryan G. Weldon*
RYAN G. WELDON
Assistant U. S. Attorney