IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CHRISTOPHER MARTINEZ MARVAN,<br><br>Petitioner,<br><br>v.<br><br>JESSE SLAUGHTER, Cascade County Sheriff; ANDREW SCHARNWEBER, Chief Border Patrol Agent, Havre Sector, U.S. Border Patrol; BRUCE SCOTT, Warden, Northwest Immigrations and Customs Enforcement Processing Center; DREW BOSTOCK, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, *in their official capacities*,<br><br>Respondents. | CV 25–49–H–DLC |

Before the Court is Petitioner Christopher Martinez Marven's Amended Petition for Writ of Habeas Corpus. (Doc. 4.) On July 10, 2025, the Court held a hearing on the Petition. (Doc. 14.) Because the Court lacks jurisdiction over this matter, the Petition is DENIED and the Court's previous Order forbidding the

1

removal of Petitioner from the District of Montana and the United States (Doc. 3 at 2) is LIFTED.

## BACKGROUND

On the evening of July 1, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. (Doc. 1.) Petitioner filed an Amended Petition on July 3, 2025. (Doc. 4.) The allegations that form the basis of the Amended Petition are as follows.

On July 1, 2025, Petitioner—a Mexican national—was stopped by the Helena Police Department ("HPD") and Immigration and Customs Enforcement ("ICE") while driving in Helena, Montana. (*Id.* ¶ 2.) At the time of the traffic stop, HPD was working with the United States Marshal Service, Homeland Security Investigations ("HSI")—a division of ICE—and United States Border Patrol to effectuate the arrest of Anderson DeJesus Bastidas Linares. (*Id.* ¶ 23.) Helena Police Officer Montgomery informed Petitioner that he stopped Petitioner's vehicle because the vehicle's license plates were expired.[1] (Doc. 13-3 at 12:13:21.) Officer Montgomery asked Petitioner if he had a driver's license; Petitioner

---

[1] The Parties dispute the purpose of the traffic stop. Petitioner alleges he was racially profiled. (Doc. 13 at 2.) Specifically, Petitioner alleges that "officers observed that [Petitioner] was Latino and decided he might be one of two Venezuelan nationals that ICE officers were looking for." (*Id.*) The Government, for its part, contends that Petitioner was stopped subject to valid traffic violations. (Doc. 6 at 2.)

2

responded that he did not. (*Id.* at 12:13:27.) Petitioner provided his name and birth date to law enforcement. (*Id.* at 12:13:30–41.) Officer Montgomery determined that Petitioner did not have a driver's license and directed Petitioner to "step out of the car." (*Id.* at 12:14:24.) Officers handcuffed Petitioner and informed him he was being detained. (*Id.* at 12:14:30.) HSI and ICE officers asked Petitioner whether he knew Bastidas Linares. (*Id.* at 12:14:50–53.) As Officer Montgomery communicated with dispatch to confirm Petitioner's identity, ICE officers continued questioning Petitioner. (*Id.* at 12:16:00–12:20:00.) ICE officers asked Petitioner if he was a United States citizen; Petitioner responded that he was a Mexican national. (*Id.* at 12:16:52–58.)

 Approximately fourteen minutes after effectuating the traffic stop, Officer Montgomery printed a citation. (*Id.* at 12:26:41.) While Officer Montgomery sat in his vehicle, ICE officers led Petitioner to their vehicle. (*Id.* at 12:26:44.) ICE officers informed Officer Montgomery that they were detaining Petitioner and that he was being deported. (*Id.* at 12:26:55–12:27.) Officer Montgomery returned to his vehicle. (*Id.* at 12:27:30.) Helena Police Officer Barton approached Officer Montgomery's window and stated, while laughing, "He's being kidnapped right now," referring to Petitioner's detainment by ICE. (*Id.* at 12:28:07.) Officer Montgomery responded, "Okay. Good enough for me." (*Id.* at 12:28:11.) Officer Montgomery then turned off his recording device without giving Petitioner the

3

citation.² (*Id.*)

ICE officers took Petitioner to the Lewis and Clark Detention Center. (Doc. 13-1 ¶ 18.) While Petitioner was detained at the jail, attorneys Andres Haladay and Lydia Dal Nogare requested to consult with Petitioner. (Doc. 4 ¶ 32.) The attorneys explained to jail officials that they intended to meet with Petitioner regarding his incarceration and to arrange representation. (*Id.* ¶ 33.) Lewis and Clark Detention Center Officer M. Secrease told the attorneys that Petitioner was "not in their custody" and therefore the jail could not facilitate an attorney-client meeting with Petitioner. (*Id.* ¶ 34.) Following this exchange, an observer witnessed a van with a Washington license plate enter the jail. (*Id.* ¶ 35.) Shortly thereafter, the van was observed leaving the jail with Petitioner presumably inside. (*Id.* ¶ 36.) Lewis and Clark Detention Center Lieutenant Troy Christensen approached Haladay and Dal Nogare outside of the jail and informed them that Petitioner was no longer in custody at the jail. (*Id.* ¶ 39.) Lieutenant Christensen further stated that he had intentionally prevented the attorneys from meeting with Petitioner at the direction

---

² Petitioner contends that the exchange between Officer Barton and Officer Montgomery and Officer Montgomery's decision to not issue the citation supports the conclusion that Petitioner was stopped and detained because of his ethnicity rather than a traffic violation. (Doc. 13 at 18.) Having reviewed the body-worn camera footage, the Court is alarmed that a law enforcement officer would suggest—even in jest—that a "kidnapping" occurred under his watch. Nevertheless, as explained below, the Court does not have jurisdiction to consider the merits of Petitioner's argument.

of ICE. (*Id.*)

After leaving the Lewis and Clark Detention Center, ICE officers took Petitioner to a Customs and Border Protection facility. (*Id.* ¶ 38.) ICE officers then took Petitioner to the Cascade County Detention Center where he remains in custody. (*Id.* ¶¶ 24, 27.)

In the Government's response brief, it represents that following further investigation, law enforcement learned that Petitioner had significant immigration contacts over the years. (Doc. 6 at 7.) In 2007, the United States returned Petitioner to Mexico on two occasions after he illegally entered the Untied States. (*Id.*) In 2021, law enforcement arrested Petitioner four times after he illegally entered the United States. (*Id.* at 7–8.) As a result of Petitioner's previous unlawful presence in the United States, Petitioner is currently prohibited from entering the country under a 10-year ban. (*Id.* at 8.)

## DISCUSSION

Petitioner asserts that the July 1, 2025 traffic stop was unlawful and that his detention violates the Fourth Amendment right to be free from unreasonable seizures. (Doc. 4 ¶ 5.) Based on the alleged constitutional violation, Petitioner requests that the Court grant him a writ of habeas corpus and order Respondents to immediately release him from custody. (*Id.* ¶ 6.) Petitioner further requests that the Court "prohibit Respondents from re-detaining [Petitioner] based on any

information obtained regarding his immigration status during and resulting from the unlawful stop." (Doc. 13 at 20.)

Because this Court lacks subject matter jurisdiction to consider Petitioner's requests, the Court must deny the Petition. Jurisdiction is a threshold issue in every case. If the Court lacks jurisdiction—which is the situation here—the Court is powerless to act, regardless of what the Court thinks about the merits of the case.

8 U.S.C. § 1252(b)(9), known as the "zipper clause," "consolidate[s] judicial review of immigration proceedings into one action in the court of appeals." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 223 (2020). The statute, as originally enacted in 1996, stated:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9) (1997). In 2007, Congress passed the REAL ID act, adding the following language to explicitly prohibit habeas review in removal proceedings:

> Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007) (quoting 8 U.S.C. §

1252(b)(9) (2007)). Based on the plain language of the zipper clause and its legislative history, the Ninth Circuit has concluded that any claim "'arising from' removal proceedings" can be reviewed only through the petition for review process. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016). In other words, any issue "arising from any action taken or proceeding brought to remove [an illegal immigrant] from the United States" can only be reviewed by the United States Court of Appeals through a petition for review after exhausting the administrative process. *Id.*

The threshold question for this Court, then, is whether Petitioner's detention arises from removal proceedings initiated by the Government. If the Government has initiated removal proceedings, this Court lacks jurisdiction over this matter and Petitioner's claims can only be heard, initially, by an Immigration Judge. At the hearing, the Government introduced Defendant's Exhibit 2, titled "Department of Homeland Security Notice to Appear." (Doc. 14 at 2.) The exhibit—which was served on Petitioner on July 8—demonstrates that the Government has commenced removal proceedings against Petitioner. *See United Farm Workers v. Noem*, 2025 WL 1235525, at *15 (E.D. Cal. Apr. 29, 2025) (citing *Pereida v. Wilkinson*, 592 U.S. 224, 227 (2021)) ("Removal proceedings commence when the government files a charge, a 'Notice to Appear' in immigration court is served upon the alien, or the alien is served with a 'Notice of

Intent.'").

To be sure, at the July 10 hearing, the undersigned asked the Government if removal proceedings had commenced. The Government answered affirmatively. While Petitioner's attorney could not answer when asked the same question, the Court is satisfied based on the Notice to Appear and the Government's representation that the Government has initiated removal proceedings against Petitioner, and therefore, this Court lacks jurisdiction over this matter.

The cases cited by Petitioner do not convince the Court otherwise. Petitioner fails to cite—and the Court is unaware of—a case in which a federal district court provided habeas relief after administrative removal proceedings had commenced against an individual without legal status in the United States, based on a Fourth Amendment violation. For example, *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025), *Mahdawi v. Trump*, 136 F.4th 443 (2d Cir. 2025), *Suri v. Trump*, 2025 WL 1806692 (4th Cir. July 1, 2025), and *Khalil v. Joyce*, 2025 WL 1232369 (D.N.J. Apr. 29, 2025) pertained to judicial review of alleged First Amendment violations in the detention of individuals with legal status. These cases are inapposite to the matter before this Court.

*Trump v. J. G. G.*, 145 S. Ct. 1003 (2025) addressed a district court's jurisdiction to issue a temporary restraining order where Venezuelan nationals were detained pursuant to the Alien Enemies Act. Here, in comparison, the

8

Government has represented to the Court that it will process Petitioner through traditional administrative proceedings, not the Alien Enemies Act.

In *Sanchez v. Sessions*, 904 F.3d 643 (9th Cir. 2018), the Ninth Circuit reviewed a final order of removal issued by an Immigration Judge and affirmed by the Board of Immigration Appeals ("BIA")—the administrative body that hears appeals rendered by Immigration Judges. The Ninth Circuit concluded that the Petitioner had made a prima facie showing that the Government detained Petitioner solely on the basis of his race, in violation of federal regulations. *Id.* at 650–51. Because the Ninth Circuit found the violation egregious, it remanded the case to the BIA to allow the Government the opportunity to rebut Petitioner's evidence. *Id.* at 656–57. The Ninth Circuit further instructed "If the Government fails to rebut Sanchez's showing that the violation was egregious, the agency shall consider whether Sanchez is entitled to termination [of removal proceedings]." *Id.* at 657. While *Sanchez* demonstrates that suppression of evidence may be appropriate in cases where the Government egregiously violates federal law, it also reinforces the Court's conclusion that claims of egregious violations in removal cases belong in front of an Immigration Judge, not a federal district court.

On July 12, 2025, Petitioner filed a notice of supplemental authority. (Doc. 16.) While that authority, *Vasquez Perdormo v. Noem*, No. 2-25-cv-05605-MEMF-SP (C.D. Cal. July 1, 2025), ECF 87, initially causes pause, *Perdormo*—like the

9

other cases cited by Petitioner—is distinguishable. In *Perdormo*, United States District Judge Maame Ewusi-Mensah Frimpong of the Central District of California found that despite Section 1252(b)(9), the court had jurisdiction to issue a temporary restraining order requiring the Government to allow detainees access to legal counsel and forbidding the Government from relying on apparent race or ethnicity, the spoken language of an individual, presence at a particular location, or type of employment to form the basis of reasonable suspicion for a detentive stop. *Id.* at 31–33. But, based on the information publicly available and the supplemental authority filed by Petitioner (Doc. 16-1), Judge Frimpong has not ordered habeas relief for any of the Plaintiffs in *Perdormo*. That makes sense, because the text of Section 1252(b)(9) explicitly precludes federal district courts from considering such requests for relief. *J.E.F.M.*, 837 F.3d at 1029.

In sum, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). While the Court takes allegations of racial profiling and constitutional violations seriously, "[Petitioner] cannot bypass the immigration courts and proceed directly to district court. Instead, [he] must exhaust the administrative process before [he] can access the federal courts." *J.E.F.M.*, 837 F.3d at 1029. Petitioner is scheduled to see an Immigration

10

Judge in Tacoma, Washington on August 19, 2025 at 8:30 a.m. (*See* Doc. 14 at 2.) In that forum, Petitioner may raise his constitutional arguments before an adjudicator with jurisdiction to grant relief.

## CONCLUSION

This Court lacks jurisdiction to grant Petitioner's Amended Petition for Writ of Habeas Corpus; therefore, the Petition must be denied.

Accordingly, IT IS ORDERED that the Amended Petition (Doc. 4) is DENIED.

IT IS FURTHER ORDERED that the Court's previous Order forbidding the removal of Defendant from the District of Montana and the United States (Doc. 3 at 2) is LIFTED.

IT IS FURTHER ORDERED that the above-captioned matter is DISMISSED. The Clerk of Court is directed to close this case file.

DATED this 15th day of July, 2025.

_____
Dana L. Christensen, District Judge
United States District Court